Richard Lee COTHRUM, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13290.

Court of Criminal Appeals of Oklahoma.

March 6, 1963.

Valdhe F. Pitman and Malcolm M. Baucum, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam. H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Richard Lee Cothrum, hereinafter referred to as defendant, was charged in the District Court of Cleveland County with the crime of Burglary Second Degree; was tried before a jury, found guilty, and sentenced to two years in the penitentiary.

Defendant lodged his appeal in this Court within the time prescribed by law, urging two main contentions of error on which he relies for reversal, which are:

(1) Error in permitting the complaining witness to testify that he identified the defendant in a police line-up.

(2) Error in permitting the deputy sheriff to testify that the complaining witness picked defendant out of a police line-up.

Before we discuss this at any length, it will be necessary to briefly outline the facts in this case:

Mrs. W. Z. Griffin, who lives west of the city of Moore, left her house at approximately 2 p. m. to go to the store and run some errands. She left the house in good order, and locked the front door and thought she had locked the back. Before she returned, her husband came in from work, saw a strange car parked in the driveway, and entered the house thru the garage. He smelled cigarette smoke, and noticed the house in dis-array. He heard the front door slam, and a figure pass in front of the picture window. He went into the bedroom to look for his gun, found it gone; and then ran out on the front porch, and observed defendant in his car (a 1952 or 53 Mercury) backing out of the driveway. He asked him what he was doing in the house, and he said, "The rest of them are around in the back", and Mr. Griffin said, "What do you mean the rest of them?", and he said, "Your family"; all the time backing out of the driveway. Mr. Griffin gave a complete description of the defendant, his car, and a partial tag number to the police. An alert was sounded, and defendant was arrested in Oklahoma City 2 days after for negligent driving, and subsequently delivered to the Cleveland County Sheriff. From the above set of facts, defendant was brought to trial on the charge of Burglary Second Degree.

Upon examination of the record, we find that the opening statement of the County Attorney refers to the police line-up identification by Mr. Griffin as follows:

"* * * Now Mr. Wheeler is going to take the witness stand and he's going to say, Well, I got this defendant right here from Oklahoma City and I brought him back down here, Mr. Griffin came down, we set up a line-up for him * * *"

"BY MR. BAUCUM: Now just a moment, your Honor; comes now the defendant and objects to any testimony or any remarks in the opening statement as to a line-up for the reason that evidence of a line-up has been held by the Court of Criminal Appeals to be hearsay and not admissable.

"BY THE COURT: Overruled, exception.

"MR. TRIMBLE CONTINUES: That they set up a line-up and that Mr. Griffin just picked this Defendant out of that line up just like that as being the person that burglarized his place. * * *"

At the conclusion of this opening statement, counsel for defendant moved for a mis-trial for the reason that the County Attorney referred to an identification made in a line-up, was overruled, and exception noted.

W. Z. Griffin, the complaining witness, testified during direct examination as follows:

"A. The house was completely re-arranged, all the belongings in the house was scattered all over the house.

"Q. What did you do whenever you found this?

"A. Well, the first, I heard the front door slam as I entered the, into the back kitchen and I seen the silhouette go by the picture window and I ran to the front door and seen this person driving away, backing out of the driveway in his car.

"Q. Did you recognize that person?

"A. Yes, sir.

"Q. If he is a person who is present in the Courtroom today, would you point him out?

"A. Yes, sir.

"Q. Is he present?

"A. Yes, sir.

"Q. Would you point him out, please?

"A. This gentleman right here. (Indicating the defendant)

"Q. Is that the person you saw that day?

"A. Yes, sir."

He testified further:

"Q. Calling your attention to the 22nd of April, 1962, did you have an occasion to see the defendant on that day?

"A. Yes, sir.

"Q. Where was that?

"A. *In a line-up.*

"BY MR. BAUCUM: Just one moment, now, may I approach the Bench?

"BY THE COURT: Yes, sir.

"BY MR. BAUCUM: (Outside the hearing of the jury) Comes now the defendant and objects to any evidence relative to identification of this defendant in the line-up for the reason the same is incompetent, irrelevant, and immaterial and hearsay.

"BY THE COURT: Overruled.

"BY MR. BAUCUM: Exception.

"Q. Where was this line-up?

"A. Here in the Courthouse.

"Q. How many people were in it?

"A. Eight.

"Q. If you recall?

"A. Eight, I believe eight.

"Q. Did you know any of them?

"A. I knew one.

"Q. Which one was that?

"A. This fellow here. (Indicating the defendant)

"Q. Did you know any of the other members of the line-up?

"A. No, sir.

"Q. Is this the same defendant that you saw at your house the 20th day of April, 1962?

"A. Yes, sir.

"Q. Are you positive about that?

"A. Yes, sir."

At the conclusion of this examination, defense counsel again moves for a mis-trial, is overruled, and exceptions allowed.

Mr. Roland Wheeler, Deputy Sheriff of Cleveland County testified as follows:

"Q. Did you see Mr. Griffin on the 22nd day of April, 1962?

"A. If I remember right, it was the 23rd.

"Q. On or about the 22nd?

"A. That's right.

"Q. Where did you see Mr. Griffin on the 23rd?

"A. We came to the county jail.

"Q. What did you do if anything?

"A. I held the line-up.

"Q. Who was in that line-up, if you recall?

"BY MR. BAUCUM: We object to that as incompetent, irrelevent, and immaterial, and based on hearsay.

"BY THE COURT: Overruled.

"BY MR. BAUCUM: Exception.

"A. Jack wimberley, Clarence Holloway, Billie Fawfaw, Richard Cothrum, Don Lee Melot, and Ernest Owens and Ernest Rockwell.

"Q. Was this line-up presented before Mr. Griffin?

"A. Yes, sir.

"Q. What did he do?

"A. I first had them all face the wall, after I brought Mr. Griffin out of the jailer's office and he picked Mr. Cothrum out of the line-up.

"BY MR. BAUCUM: Excuse me, may I approach the Bench?

"BY THE COURT: Yes.

"BY MR. BAUCUM: (Outside the hearing of the jury) Comes now the defendant and moves the Court to grant a mistrial herein for the reason that this officer has testified that the defendant was picked out by the complaining witness in the line-up.

"BY THE COURT: Overruled.

"BY MR. BAUCUM: Exception. May I approach the Bench, I have a case exactly in point that I found during the noon hour that I would like to present.

"BY THE COURT: Not right now.

"BY MR. BAUCUM: All right, sir."

All three segments of the above testimony constitute the basis for defendant's appeal.

We would like to express our appreciation at the thorough and very exhaustive briefs filed by both the defense counsel, Mr. Malcolm Baucum, and Mr. Sam Lattimore of the Attorney General's office. They have been of extreme value to this Court, and show extensive research, interest and hard work on the question raised herein.

The point of law in question is that referred to as "Extra-judicial Identification."

▮ The term "extra-judicial," as used herein, has reference to an identification prior to or outside of the trial in which the evidence in question is sought to be introduced. The identifying act or statement in question is sometimes referred to, alternatively, as the "prior", "previous", or "earlier" identification.

In the different jurisdictions, the question of the admissability of evidence as to

an "extra-judicial identification" of the defendant in a criminal prosecution arises in a variety of factual situations, and the determination thereof may involve the consideration of various differentiating factors. The conclusion may depend, inter alia, upon whether the testimony offered is that of the identifier or that of a third person who heard or observed the identification; upon whether the identifier testified or was available as a witness at the trial; upon whether the identifying act or statement was in the presence of the accused; upon the means by which or the manner in which the identification was made; and upon the purpose for which the evidence is offered, whether as original or substantive proof of the identity of the accused, as corroborative of the testimony of the identifying witness, or as in rebuttal of evidence or statements tending or intended to impeach or discredit the testimony of the witness as to the identity of the defendant. Furthermore, there are divergent views or theories as to the grounds of admission or exclusion of the evidence, particularly in respect of the application, in this connection, of the rules relating to hearsay evidence, and as to the effect of particular factors of circumstances.

The review of the decisions discloses that the law of the subject has in several jurisdictions been in process of development up until comparatively recent times, and that in some it is still in a more or less unsettled condition. As appears from the lengthy discussion in Colbert v. Commonwealth (Ky.), 306 S.W.2d 825, 71 A.L.R.2d 442, and the review of the cases cited therein, the rule now prevailing in most jurisdictions in which the question has been fully considered, subject to the qualifications and exceptions noted, is that the prior identification may be shown by the testimony of the identifier or identifying witness, or by the testimony of the third person to whom or in whose presence the identification was made, where the identifier has testified or is present and available for cross-examina-

tion at the trial, not as original, independent, or substantive proof of the identity of the defendant as the guilty party, but in corroboration of the testimony of the identifying witness at the trial, as to the identity of the defendant. As above indicated, however, a contrary rule obtains in some jurisdictions as to some or all of the propositions stated.

Both the Attorney General, and defense counsel urge the Court to adopt the rule set forth in Section 393–b of the Code of Criminal Procedure of the State of New York, which provides:

"When identification of any person is in issue, a witness who has on previous occasion identified such person may testify to such previous identifications."

The rule in Oklahoma up to this time, has been to the contrary, and has repeatedly held in earlier cases that this is clearly inadmissable, and this Court is not ready to completely reverse its earlier decisions.

■ We will not discuss at any length the mention of the "identification in a police line-up" referred to in the County Attorney's opening statement, as defense counsel failed to request that the jury be admonished to disregard it. This Court held in the case of Disheroon v. State, 357 P.2d 236:

"Counsel for a defendant must not only object to alleged improper statements of the county attorney in his argument to the jury, but he must go further and move the court to exclude such remarks from the jury and instruct them not to consider them for any purpose, unless the remarks were of such a character that the error would not be cured by a withdrawal of the remarks."

See, also, Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927; Conway v. State, Okl.Cr., 320 P.2d 419; McMahan v. State, 354 P.2d 476; Grimes v. State, Okl.Cr., 365 P.2d 739.

The next two instances, which are the two urged in the brief of the defendant will be considered next.

This Court held in the case of Johnson v. State, 44 Okl.Cr. 113, 279 P. 933:

"In the trial of an accused for robbery, where the issue is whether the defendant is the person who robbed the prosecuting witness, testimony of what the prosecuting witness said in identifying or describing the robber at some other time or place is not admissable as original testimony. In like manner, the testimony of the officer that from such description he arrested the defendant is hearsay and inadmissible." (Also, McCandless v. State, 49 Okl.Cr. 116, 295 P. 412.)

And, further:

"This is not an identification of the defendant as the one who committed the robbery, but testimony of an 'extra-judicial identification,' improperly suggested."

In the case of Gillespie v. State, 355 P.2d 451, this Court held:

"Identification of the defendant at a police line-up prior to trial and subsequent to the alleged crime is not an identification of the defendant as the one who committed the robbery, but testimony of an extra-judicial identification and is inadmissable as original testimony."

In the case at bar, the issue was whether the defendant was the same person that Mr. Griffin saw leaving his house the day of the burglary. Applicable to this issue was whether Mr. Griffin could identify defendant *at the trial* as the man who committed the crime.

Whether he identified him at any other time or place, either before or after the trial, would be immaterial, and in a sense, a self-serving declaration.

This Court cannot go along on the theory of the cases discussed above in other jurisdictions, and we are unable to determine where, in the cases cited in Oklahoma, that it has *ever* been held that a so-called "Extra-judicial Identification" is admissable as original testimony.

A startling example of the dangers of eyewitness identification in a police line-up was called to this writer's attention this morning in the newspaper and radio account of a Midwest City man who had been imprisoned in the Stephens County jail for nearly a month charged with Forgery. He had been picked out of a police line-up by TWO eye-witnesses. Charges were filed on that identification, and he would have stood trial next week. An alert Crime Bureau Agent noticed a similarity between this man and another arrested in Enid for the offense of forgery. When both were put in a line-up together, the same two eyewitnesses immediately picked out the last man. This is not a criticism of police line-ups, but is mentioned only for the reason of consideration of human error.

In the case at bar, the testimony was introduced as original evidence, and it was clearly inadmissable, for it was not competent to corroborate the identifying witness by proof of former identification.

Defendant did not take the stand, and his defense was alibi, testified to by his mother. There is no doubt but that the testimony of both Mr. Griffin and Deputy Sheriff Wheeler greatly bolstered the case of the State, and lent great weight to the original identification, thus prejudicing the defendant.

The admitting of this incompetent evidence may well have influenced the verdict, and deprived the defendant of a fair and impartial trial.

For the foregoing reasons, the case is hereby Reversed and Remanded back to the trial court for a new trial.

BUSSEY, P. J., and JOHNSON, J., concur.